UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JOSE LUIS ALVAREZ MARTINEZ,**

 *Plaintiff*,

v.                  Case No. 5:25-CV-01007-JKP

**SECRETARY OF USDHS KRISTI NOEM, ACTING DIRECTOR, ICE TODD M. LYONS, FOD, SAN ANTONIO MIGUEL VERGARA, WARDEN ROSE THOMPSON,**

 *Defendants*.

## MEMORANDUM OPINION AND ORDER

 Before the Court is Petitioner Jose Luis Alvarez Martinez's ("Martinez") Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 6*). Respondents filed a Response and, at the Court's request, the parties submitted supplemental briefings. *ECF Nos. 11, 12, 15, 16*. Upon consideration, the Court grants Martinez's request for a temporary restraining order and vacates the automatic stay of Immigration Judge Tyrakoski's bail determination on July 15, 2025. However, the vacation of the automatic stay will itself be stayed for fourteen (14) days to give the Government an opportunity to seek an emergency stay from the Board of Immigration Appeals under 8 C.F.R. § 1003.19(i)(1).

### BACKGROUND

 In May 2025, Immigration and Customs Enforcement ("ICE") arrested Petitioner Jose Luis Alvarez Martinez ("Martinez"). *ECF No. 6 at 1; see also ECF No. 11-1 at 6*.

 On July 15, 2025, Immigration Judge Meredith Tyrakoski granted Martinez a bond in the amount of $3,000.00. *ECF No. 6 at 1; see also ECF No. 6-2 at 8–10*.

Subsequently, Respondents filed a "Notice of ICE Intent to Appeal Custody Redetermination (Form EOIR–43)," initiating the automatic stay provision at issue, 8 C.F.R. § 1003.19(i)(2). *See* ECF No. 6 at 2; ECF No. 1-2 at 12.

Specifically, Martinez argues for his immediate release on grounds the regulation keeping him detained—the automatic stay provision found at 8 C.F.R. § 1003.19(i)(1)—violates his procedural due process rights under the Fifth Amendment to the U.S. Constitution. *ECF No. 6.*

## LEGAL STANDARD

The purpose of a Temporary Restraining Order ("TRO") is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). To obtain a TRO, an applicant must satisfy the following four elements:

(1) substantial likelihood of success on the merits;

(2) substantial threat of irreparable injury;

(3) the threatened injury outweighs any harm the order might cause to the defendant; and

(4) the injunction will not disserve the public interest.

*Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000). The decision of whether to grant or deny a TRO is within the Court's discretion. *Moore v. Brown*, 868 F.3d 398, 402 (5th Cir. 2017).

To show immediate and irreparable harm, a plaintiff must demonstrate it is likely it will suffer irreparable harm in the absence of preliminary relief. *Winter v. Nat. Res. Def Council*, 555 U.S. 7, 20 (2008). However, a "[s]pectulative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001).

"In general, a TRO is not appealable." *Board of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1000 (5th Cir. 1994). TROs are "usually effective for only very brief periods of time, far less than the time required for an appeal . . . and are then generally supplanted by appealable temporary or permanent injunctions." *Id*.

## ANALYSIS

The Court first observes at the outset it is important to respond to Respondents' assertion that the Court's jurisdiction is circumscribed in making its determination due to the sweeping powers granted to the other government branches in the field of immigration. *ECF No. 11 at 2*. One must, however, distinguish between the substantive power of the Executive branch over immigration issues, an area in which it indeed has plenary power, and the *means* the government has chosen to exercise that plenary power, to which no executive deference is necessary. *Ashley v. Ridge*, 288 F. Supp. 2d 662, 667 (D.N.J. 2003) (addressing a petitioner's procedural due process cause of action in this context); *see also Zadvydas v. Davis,* 533 U.S. 678, 695 (2001) (noting the government's plenary power to expel immigrants, but stating that "Congress must choose a constitutionally permissible means of implementing" its immigration power); *INS v. Chadha,* 462 U.S. 919, 940–941 (1983).

The Court next observes that to the extent the parties dispute which statute applies to govern Martinez's detention, the Court need not decide the outcome of these arguments. *See ECF No. 11 at 8–47; ECF No. 15 at 1–5*. At present, Martinez is detained pursuant to the automatic stay provision of 8 C.F.R § 1003.19(i)(2), not the mandatory-detention provision of 8 U.S.C. § 1225(b). *E.g.*, *Jacinto v. Trump*, No. 4:25-CV-03161, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025). The Court therefore is concerned only with the lawfulness of the automatic stay, the present basis for Martinez's detention.

The Court finally observes that, in their Response to Martinez's Motion for Temporary Restraining Order and Preliminary Injunction, Respondents only minimally address the TRO legal standards. *See ECF No. 11*. In this regard, Respondents' primary argument concerning the question presented by Martinez—whether a regulation can permit an agency official to unilaterally detain a person after an immigration judge has ordered the person's release—appears to be that Martinez "has been detained for only three months." ECF No. 11 at 5–6.

## I. Likelihood of Success on the Merits

Noncitizens are entitled to due process of the law under the Fifth Amendment. *Demore v. Kim*, 538 U.S. 510, 523 (2003). To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Pursuant to *Mathews*, courts weigh the following three factors:

(1) the private interest that will be affected by the official action;

(2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

(3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. Petitioner addresses the *Mathews* factors in his Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 6 at 9–13. In their Response, Respondents cite *Mathews* once but not do not discuss the *Mathews* factors. ECF No. 11 at 4.

### A. Private Interest

It is undisputed Martinez has a significant private interest in being free from detention. "The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Moreover, when assessing the private inter-

est, courts consider the detainee's conditions of confinement, namely, "whether a detainee is held in conditions indistinguishable from criminal incarceration." *Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 at *7 (D. Minn. May 21, 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)).

In his Declaration, Martinez reports being held at the Karnes County Immigration Processing Center since May 21, 2025. *ECF No. 6-2 at 27*. As in *Günaydin*, "he is experiencing all the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Günaydin*, 2025 WL 1459154 at *7. In addition, he has identified a significant private interest based on his separation from his minor son who suffers from mental health issues. *ECF No. 6-2 at 27–28*.

Thus, the first *Mathews* factor supports Martinez's claim of a Fifth Amendment violation.

### B. Risk of Erroneous Deprivation

As to the second *Mathews* factor, the Court finds Martinez is likely to succeed in demonstrating the automatic stay provision, found at 8 C.F.R. § 1003.19(i)(2), creates a substantial risk of erroneous deprivation of Martinez's interest in being free from detention.

Under this factor, courts must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Günaydin*, 2025 WL 1459154 at *8.

The risk of deprivation is high because the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing. *ECF No. 6 at 10–11*. In this case, Judge Tyrakoski found Martinez was not a threat to public safety and determined the $3,000

bond would mitigate any risk of flight. Nevertheless, despite a neutral decision-maker finding a bond was warranted, the automatic stay provision allowed Respondents, who lost their bond argument, to unliterally deprive Martinez of his liberty. Other courts considering the automatic stay provision have found this problematic as well. *See, e.g., Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004) ("The [automatic stay] procedure additionally creates a potential for error because it conflates the functions of adjudicator and prosecutor.").

Additionally, the stay provision does not require Respondents to consider or demonstrate any individualized facts or show a likelihood of success on the merits. *See* 8 C.F.R § 1003.19(i)(2) (stating the stay is automatic and the bond "shall be stayed" upon filing of the form EOIR-43). "[A] stay of an order directing the release of a detained individual is an 'especially' extraordinary step, because '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Günaydin*, 2025 WL 1459154 at *9 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). By contrast, the automatic stay regulation "turns these well-established procedural principles on their heads and carries a significant risk of erroneous deprivation." *Id*.

As to available alternatives, the regulations already provide one: Respondents may request a discretionary emergency stay from the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. § 1003.10(i)(1) (granting BIA discretionary stay authority). This procedure mitigates the concern about Respondents usurping the neutral adjudicatory role and provides additional safeguards that the automatic stay provision lacks. *See, e.g.*, *Maldonado v. Olson*, No. 25-CV-03142 (SRN/SGE), 2025 WL 2374411 (D. Minn. Aug. 15, 2025) ("In sum, § 1003.19(i)(2) presents a serious risk of erroneous deprivation of [a petitioner's] private interests, and § 1003.19(i)(1) already provides a simple alternative that would safeguard those rights."); *El-

*Dessouki v. Cangemi*, No. CIV 063536 DSD/JSM, 2006 WL 2727191, at *3 (D. Minn. Sept. 22, 2006).

Thus, the second *Mathews* factor also supports Martinez's claim of a Fifth Amendment violation.

    **C.   Respondents' Competing Interest and Burdens of Additional or Substitute Procedural Requirements**

As to the third *Mathews* factor, the Court finds Martinez is likely to succeed in demonstrating that ensuring persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest, but there is no showing here that public safety or ensuring Martinez's attendance at future proceedings requires a stay of the order releasing him on bond.

Under this factor, the Court weighs the private interests at stake and the risk of erroneous deprivation of those interests against Respondents' interests in persisting with the automatic stay and the burdens of additional or substitute requirements. *Mathews*, 424 U.S. at 335.

To the extent Respondents set forth a potential interest, Respondents state only in conclusory fashion "the government and the public at large have a strong interest in the enforcement of the immigration laws and the removal of criminal aliens." *ECF No. 11 at 6*. Even if the Court were to assume Respondents asserted an interest in, for example, ensuring Martinez's availability for his immigration case, this interest has already been secured by Judge Tyrakoski's finding that Martinez is neither a danger nor a flight risk. Thus, the government's interest is both vague and minimal especially in contrast to the significant liberty interest at stake for Martinez.

In conclusion, at this stage of proceedings, all three *Mathews* factors favor Martinez's position. Accordingly, the Court finds Martinez is likely to succeed in demonstrating the automatic stay regulation found at 8 C.F.R § 1003.19(i)(2) violates Martinez's procedural due process

rights under the Fifth Amendment,[1] fulfilling the first element an applicant must satisfy to obtain a TRO.

## II. Threat of Irreparable Harm

The second element an applicant must satisfy to obtain a TRO requires the Court to consider the threat of irreparable injury absent injunctive relief. *Enrique Bernat F., S.A.*, 210 F.3d at 442. A movant "must show a real and immediate threat of future or continuing injury apart from any past injury." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014). While the deprivation of a fundamental right constitutes irreparable harm requiring issuing a temporary restraining order, the harm cannot be speculative. *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976); *see also Hurley v. Gunnels*, 41 F.3d 662 (5th Cir. 1994) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).

Martinez presents facts in support of a finding of irreparable harm. Martinez reports since his detention his minor son, J.A., has been in the care of a family friend who is struggling to provide his minor son's basic needs. *ECF No. 6-2 at 28*. In March 2025, J.A. experienced a serious mental health crisis and Martinez reasonably fears if he remains detained J.A.'s grades and mental health will continue to decline. *Id*. Martinez further reports he needs to be released to provide a stable home and financial support for J.A. *Id*.

---

[1] Numerous federal courts across the country have found, over the past twenty years, that the automatic stay provision, found at 8 C.F.R. § 1003.19(i)(2), likely violates the procedural due process rights of detainees. *E.g.*, *Jacinto v. Trump*, No. 4:25-CV-03161, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-CV-03142 (SRN/SGE), 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Anicasio v. Kramer*, No. 4:25-CV-03158, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-CV-03162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Mohammed H. v. Trump*, No. CV 25-1576 (JWB/DTS), 2025 WL 1692739 (D. Minn. June 17, 2025); *Gunaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 (D. Minn. May 21, 2025); *Zabadi v. Chertoff*, No. 05-CV-01796 (WHA), 2005 WL 1514122 (N.D. Cal. June 17, 2005); *Zavala v. Ridge*, 310 F. Supp. 2d 1071 (N.D. Cal. 2004); *Uritsky v. Ridge*, 286 F. Supp. 2d 842 (E.D. Mich. 2003); *Bezmen v. Ashcroft*, 245 F. Supp. 2d 446 (D. Conn. 2003); *but see Kambo v. Poppell*, No. SA-07-CV-800-XR, 2007 WL 3051601 (W.D. Tex. Oct. 18, 2007); *Pisciotta v. Ashcroft*, 311 F. Supp. 2d 445 (D.N.J. 2004).

Respondents give short shrift to irreparable harm, failing to refute or respond to Martinez's claims other than stating "Petitioner has provided no basis for this Court to determine that his continued detention pending the BIA's . . . review of the immigration judges's bond order will cause him irreparable harm." *ECF No. 11 at 6*. The Court disagrees.

Accordingly, the Court finds that the harm is self-evident, fulfilling the second element an applicant must satisfy to obtain a TRO.

## III.   Balance of Harms & Public Interest

The balance of harms and the public interest favor Martinez. A court must "balance the competing claims of injury and consider the effect on each party of the granting or withholding of the requested relief." *Rosa v. McAleenan*, 583 F. Supp. 3d 850 (S.D. Tex. 2019) (internal citations omitted). The court must conclude that the movant would "suffer more harm without the injunction than the enjoined party if relief is granted." *Id*. The movant also must show that the requested relief will not be adverse to public interest. *Id*. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id*. While the protection of constitutional rights are "[o]rdinarily . . . the highest public interest at issue in a case," matters such as national security and national defense can outweigh a movant's constitutional rights. *Id*.

Martinez presents facts in support of a finding the balance tips in his favor. Martinez reports Judge Tyrakoski concluded he poses neither a danger to the community nor a flight risk, attaching Judge Tyrakoski's Bond Memorandum and Order to his Motion. *See ECF No. 6-2 at 8–10*. He further reports "[a]ny administrative burden imposed on Respondents by temporarily halting unlawful detention is minimal and far outweighed by the substantial harm [he] continues to suffer each day his liberty is denied." *ECF No. 6 at 14*.

Again, to the extent Respondents set forth a potential interest, Respondents state only in conclusory fashion "the government and the public at large have a strong interest in the enforcement of the immigration laws and the removal of criminal aliens." *ECF No. 11 at 6*. Thus, Martinez meets his burden of persuasion.

Accordingly, the Court finds the final fused third and fourth elements favor Martinez, fulfilling the remaining elements an applicant must satisfy to obtain a TRO.

The Court notes the only holding that can be taken from this Order is that Martinez has made a sufficient showing to justify preserving the status quo for a deeper inquiry—no more, no less. *Granny Goose*, 415 U.S. at 439. The status quo being Martinez's release on bond, as reflected in the last word on detention—Judge Tyrakoski's order releasing Martinez on bond. *ECF No. 6-2 at 8–10*.

The Court also notes its awareness of ICE's role in immigration enforcement and the historical deference owed to federal agencies. However, where conflicts exist between any deference that may be due and constitutional traditions and norms, the Court must step in to resolve the dispute.

## CONCLUSION

For the reasons set forth above, Martinez's Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 6*), is **GRANTED** as to Martinez's request for a temporary restraining order and the Court vacates the automatic stay of Immigration Judge Tyrakoski's bail determination on July 15, 2025.

However, the vacation of the automatic stay will itself be stayed for fourteen (14) days to give the Government an opportunity to seek an emergency stay from the Board of Immigration Appeals under 8 C.F.R. § 1003.19(i)(1). This emergency stay provision is appropriate as it "pre-

sents a narrowly tailored, less restrictive means whereby the government's interest in seeking a stay of the custody redetermination hearing may be protected without unduly infringing upon [petitioner]'s liberty interest." *Bezmen v. Ashcroft*, 245 F. Supp. 2d 446, 451 (D. Conn. 2003) (interpreting the predecessor to 8 C.F.R. § 1003.19(i)(1), 8 C.F.R. § 3.19(i)(1)).

Accordingly, the automatic stay is **DISSOLVED** effective 10 a.m. September 22, 2025. If no emergency stay is obtained by this date, Martinez must be permitted to post bond and be released in accordance with the rulings and conditions set forth in Immigration Judge Tyrakoski's bail determination on July 15, 2025.

The parties are further **ORDERED** to provide continuing Joint Status Reports beginning **Friday September 12, 2025**. Subsequent Joint Status Reports shall be provided **each Friday no later than 5:00 p.m.** until further order of the Court.

It is so ORDERED.
SIGNED this 8th day of September, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE